# United States District Court

NORTHERN DISTRICT OF GEORGIA

**ORIGINAL**

UNITED STATES OF AMERICA
v.

CHASE VALENTINE

**CRIMINAL COMPLAINT**

CASE NUMBER: 1:13-MJ-173

FILED IN CHAMBERS
FEB 11 2013
U.S. MAGISTRATE JUDGE
N.D. GEORGIA

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.
In January 2013, in DeKalb County and elsewhere in the Northern District of Georgia, the defendant did,

attempt to possess with intent to distribute cocaine, a Schedule II controlled substance, and possess a firearm in furtherance of a drug trafficking crime

in violation of Title 21, United States Code, Section 841 and Title 18, United States Code, Section 924(c).

I further state that I am a agent of the Federal Bureau of Investigation (FBI) and that this complaint is based on the following facts:

See Attached Affidavit

Continued on the attached sheet and made a part hereof.      (X) Yes ( ) No

Signature of Complainant
James P. Hosty, IV

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to before me, and subscribed in my presence

February 11, 2013                                  at      Atlanta, Georgia
Date                                                        City and State

Alan J. Baverman
United States Magistrate Judge
Name and Title of Judicial Officer                          Signature of Judicial Officer

AUSA Brent A. Gray

# AFFIDAVIT IN SUPPORT OF ARREST WARRANT
# FOR CHASE VALENTINE

I, James P. Hosty, IV, being duly sworn, depose and state the following:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed for approximately 7 years. I am currently assigned to the Atlanta, Georgia office and work on the Civil Rights/Human Trafficking/Public Corruption Squad, which has the responsibility for investigating police corruption, among other federal crimes. I am a law enforcement officer of the United States, FBI, U.S. Department of Justice, within the meaning of Title 18, United States Code, Section 3052, which includes being an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses pursuant to Title 18, United States Code, Section 3052.

2. During my law enforcement career, I have participated in dozens of investigations relating to drug trafficking and police corruption. I have received specialized training in the methods and techniques used by drug trafficking organizations. I have debriefed many witnesses and confidential informants about drug trafficking generally, as well as the specific practice of employing corrupt law enforcement officers as part of a drug trafficking scheme. Through this training and experience, I have become familiar with many of the patterns of activity exhibited by drug traffickers. Except where I state that I am relying on my training and experience as described here, the information in this affidavit is based on information and belief, the source of that information and basis for that belief being my own investigation and information obtained by other law enforcement agents.

3. I submit this affidavit in support of a warrant for the arrest of CHASE VALENTINE for attempted possession with the intent to distribute cocaine in violation of Title 21, United States

Code, Section 841, and possession of a firearm in furtherance of a drug trafficking crime in violation of Title 18, United States Code, Section 924(c).

## BACKGROUND OF INVESTIGATION

4. Based on my training and experience, I know that sophisticated drug trafficking groups distribute narcotics using a variety of covert methods that are designed to avoid detection by law enforcement and others. If detected, they are aware law enforcement will seize the drugs and money and arrest them. They also know that other drug dealers or criminal groups will rob them, if given a chance, stealing both the drugs and money. In the worst case, drug deals can turn violent.

5. Given these risks, drug traffickers occasionally attempt to enlist law enforcement officers to provide protection both for them and the drug transactions they conduct. In employing corrupt police officers at a drug deal, the traffickers hope to prevent rival groups from intervening and ultimately stealing their drugs and the drug proceeds. Additionally, they hope to keep legitimate law enforcement at bay by positioning a visible law enforcement presence at or near the drug transactions. In these cases, drug traffickers are willing to pay thousands of dollars to corrupt law enforcement officers who will provide protection for these transactions.

6. In August, 2011, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) was investigating a street gang in the Metro Atlanta area. During the course of that investigation, a confidential informant (CI-1) provided information about the gang's criminal activities. CI-1 told federal agents that police officers were involved in protecting the gang's activities, including their drug trafficking crimes. In general, these police officers, in uniform, driving police vehicles or otherwise displaying indicia of their positions, protected the drug dealers from being detected or arrested by other law enforcement officers and from being robbed by other drug dealers. The

information provided to federal agents by CI-1 regarding the use of law enforcement officers to protect drug deals is consistent with my experience and training in the investigation of similar cases.

7. CI-1, who had been working with federal agents since August, 2011, communicated to gang members and their associates that CI-1 would need police protection for his/her upcoming drug transactions. Shortly thereafter, Shannon Bass, Jerry B. Mannery, Jr., and Elizabeth Coss, none of whom are law enforcement officers, began identifying to CI-1 law enforcement officers interested in protecting his/her drug deals. Once those individuals were identified, information regarding the location and circumstances of the proposed drug deals was relayed to CI-1 and/or Shannon Bass, Jerry B. Mannery, Jr., Elizabeth Coss for him/her to pass along to law enforcement officers who expressed an interest in protecting the drug transactions.

## FACTS ESTABLISHING PROBABLE CAUSE

8. On or about January 17, 2013, CHASE VALENTINE, a former jail officer with the DeKalb County Sheriff's Office (DCSO), provided protection for what he believed to be a drug transaction involving multiple kilograms of cocaine.

9. CHASE VALENTINE worked as a jail officer with DCSO from January, 1999 until August, 2010. He is currently certified by the Georgia Peace Officer Standards and Training (POST) Council and is eligible for employment as a law enforcement officer.

10. <u>Conversation on January 15, 2013.</u> On January 15, 2013, FBI agents surveilled a meeting between CHASE VALENTINE, Gregory Lee Harvey, Shannon Bass, and Monyette McLaurin at the Applebee's Restaurant, 4353 Lawrenceville Highway, Tucker, Georgia. During this meeting, CHASE VALENTINE falsely represented that he was a deputy with the DCSO. CHASE VALENTINE and the others agreed to assist Bass in protecting Bass's future cocaine transactions in exchange for payment.

11.     <u>Drug Transaction on January 17, 2013.</u>  On January 17, 2013, FBI agents surveilled a meeting between CHASE VALENTINE, Harvey and Bass in a parking lot located at Mr. Cues Billiards, 3541 Chamblee Tucker Road, Atlanta, Georgia.  During this meeting, Bass directed Harvey to a parking lot of a Kroger Store to watch the parking lot to make sure it was a safe place to conduct a drug transaction and that there was no law enforcement present.  Then, CHASE VALENTINE and Bass got into Bass's vehicle and Bass drove to a Quick Trip, 4086 Pleasantdale Road, Doraville, Georgia.  Simultaneously, Harvey drove his personal vehicle to the Kroger Store, 4357 Lawrenceville Highway, Tucker, Georgia.  Once at the Quick Trip, Bass told CHASE VALENTINE that Bass was going into a parked Chevrolet Suburban to retrieve a quantity of cocaine that was to be sold in the drug transaction in the Kroger Store parking lot.  Bass told CHASE VALENTINE to stand watch while Bass was inside the Suburban.  FBI agents then observed CHASE VALENTINE standing outside Bass's vehicle wearing a DCSO uniform and a firearm in a holster on his belt.  When Bass returned to his vehicle with a bag, both CHASE VALENTINE and Bass got into Bass's vehicle.  Bass handed CHASE VALENTINE the bag which contained three kilograms of counterfeit cocaine.  Bass then asked CHASE VALENTINE to count the number of kilograms of cocaine in the bag. CHASE VALENTINE did so and told Bass that there were three inside.  Bass and CHASE VALENTINE drove to the aforementioned Kroger Store where Harvey was waiting.  Within minutes, CI-6 arrived and parked his/her vehicle near Bass's vehicle.  Bass then got into CI-6's vehicle and Bass gave CI-6 the bag containing three kilograms of counterfeit cocaine.  Then, CI-6 gave Bass a back pack containing $6,000.  During this transaction, FBI agents observed Harvey parked near the drug transaction and CHASE VALENTINE standing just outside Bass's vehicle, watching the transaction.  Once this transaction was complete, Bass returned to his vehicle and CHASE VALENTINE got into Harvey's vehicle.  Bass, Harvey, and

CHASE VALENTINE left the Kroger Store parking lot and drove immediately to the parking lot of Mr. Cue's Billiards, 3541 Chamblee Tucker Road, Atlanta, Georgia. There, Bass handed Harvey the payment of $6,000 which was to be shared with CHASE VALENTINE. This transaction was audio and video recorded.

12. In communications leading up to and through the above-described drug transactions, the drug involved was described to CHASE VALENTINE as cocaine.

## CONCLUSION

13. Based on the foregoing, I submit there is probable cause to believe that CHASE VALENTINE attempted to possess with the intent to distribute cocaine in violation of Title 21, United States Code, Section 841, and possessed a firearm in furtherance of a drug trafficking crime in violation of Title 18, United States Code, Section 924(c).